UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| MARY NEWSOME, | CASE NO. 1:11CV2073 |
| Plaintiff, | MAGISTRATE JUDGE GEORGE J. LIMBERT |
| v. | |
| MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY, | **MEMORANDUM OPINION AND ORDER** |
| Defendant. | |

Plaintiff, Mary Newsome, seeks judicial review of the final decision of Michael J. Astrue ("Defendant"), Commissioner of the Social Security Administration ("SSA"), denying her application for Disability Insurance Benefits ("DIB"). ECF Dkt. #1. For the following reasons, the Court REVERSES the ALJ's decision and REMANDS the decision for reevaluation and further analysis of Plaintiff's credibility regarding the pain caused by her fibromyalgia. ECF Dkt. #22.

**I.**  **PROCEDURAL AND FACTUAL HISTORY**

On January 20, 2009, Plaintiff filed an application for DIB alleging disability beginning November 1, 2008.[1] ECF Dkt. #12 at 65.[2] Plaintiff meets the insured status December 31, 2013. *Id.* at 67. The SSA denied Plaintiff's application initially and on reconsideration. *Id.* at 104-105. On September 17, 2009, Plaintiff filed a request for an administrative hearing, *Id.* at 135, and on December 14, 2010, an ALJ conducted the administrative hearing *via* videoconference where Plaintiff and Robert Edwards, a vocational expert, offered testimony. *Id.* at 80-103. On December

---

[1] Plaintiff alleged disability date does coincide with any medical diagnosis or event that occurred on that date.

[2] Page numbers refer to "Page ID" numbers in the electronic filing system.

22, 2010, the ALJ issued a Decision denying benefits. *Id.* at 65-79. Plaintiff filed a request for review, which the Appeals Council denied. *Id.* at 54-56.

On September 30, 2011, Plaintiff filed the instant suit seeking review of the ALJ's decision. ECF Dkt. #1. On April 26, 2012, Plaintiff filed a brief on the merits. ECF Dkt. #18. On June 11, 2012, Defendant filed a brief on the merits. ECF Dkt. #19. On July 5, 2012, with leave of Court, Plaintiff filed her reply brief.

## II. SUMMARY OF RELEVANT PORTIONS OF THE ALJ'S DECISION

The ALJ determined that Plaintiff suffered from obesity, depressive disorder, anxiety disorder, arthritis of the right knee, and carpal tunnel syndrome, which qualified as severe impairments under 20 C.F.R. 404.1520(c). *Id.* at 67. The ALJ next determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1(20 C.F.R. 404.1520(d), 404.1525, 404.1526). *Id*. at 68.

The ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. 416.967(a), except Plaintiff can lift and carry up to ten pounds frequently and occasionally, and sit for six hours in an eight hour day and stand and/or walk two hours in an eight hour day. She can only occasionally bend and stoop and engage in gross handling, but should avoid repetitive gripping. She can perform simple, routine, repetitive tasks in a nonproductive environment. She can perform jobs that do not require frequent interaction with the public. *Id.* at 70. The ALJ concluded that Plaintiff is not capable of performing her past work as a hairdresser or server, but that she can perform a limited range of unskilled sedentary work, including the representative occupations of unarmed gate guard, surveillance system monitor, and office clerk. *Id.* at 73-74.

## III. STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS

To be eligible for benefits, a claimant must be under a "disability" as defined by the Social Security Act. 42 U.S.C. §§ 423(a) & (d), 1382c(a). Narrowed to its statutory meaning, a "disability" includes physical and/or mental impairments that are both "medically determinable" and severe enough to prevent a claimant from (1) performing his or her past job and (2) engaging in

"substantial gainful activity" that is available in the regional or national economies. *Id.* The claimant bears the ultimate burden of establishing that he or she is disabled under the Social Security Act's definition. *Key v. Callahan*, 109 F.3d 270, 274 (6th Cir.1997).

Administrative regulations require a five-step sequential evaluation for disability determinations. 20 C.F.R. §§ 404.1520(a) (4), 416.920(a)(4):

1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b) and 416.920(b) (1992));

2. An individual who does not have a "severe impairment" will not be found to be "disabled" (20 C.F.R. §§ 404.1520(c) and 416.920(c) (1992));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement, see 20 C.F.R. § 404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d) and 416.920(d) (1992));

4. If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e) and 416.920(e) (1992));

5. If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f) and 416.920(f) (1992)).

*Hogg v. Sullivan*, 987 F.2d 328, 332 (6th Cir. 1992). The claimant has the burden to go forward with the evidence in the first four steps and the Commissioner has the burden in the fifth step. *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

## IV.    STANDARD OF REVIEW

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability. This Court's review of such a determination is limited in scope by § 205 of the Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Therefore, this Court's scope of review is limited to determining whether substantial evidence supports the findings of the Commissioner and whether the Commissioner applied the correct legal standards. *Abbott v.*

*Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990). The Court cannot reverse the decision of an ALJ, even if substantial evidence exists in the record that would have supported an opposite conclusion, so long as substantial evidence supports the ALJ's conclusion. *Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 528 (6th Cir.1997). Substantial evidence is more than a scintilla of evidence, but less than a preponderance. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is evidence that a reasonable mind would accept as adequate to support the challenged conclusion. *Id.*; *Walters,* 127 F.3d at 532. Substantiality is based upon the record taken as a whole. *Houston v. Sec'y of Health and Human Servs.*, 736 F.2d 365 (6th Cir. 1984).

## V. ANALYSIS

Plaintiff advances three arguments in this appeal. First, Plaintiff contends that the ALJ erred at step three when he did not consider the Listings on arthritis and CTS. Second, Plaintiff asserts that the ALJ did not give appropriate weight to the opinion of Plaintiff's treating physician. Third, Plaintiff asserts that the ALJ erred in his assessment of Plaintiff's credibility with respect to her allegations of pain. Because Plaintiff's appeal is predicated exclusively upon the ALJ's analysis of her physical limitations and her pain, the Court will limit its review to Plaintiff's physical impairments. It is important to note that Plaintiff does not challenge the fact that the ALJ did not characterize her fibromyalgia as a severe impairment.

At the hearing, the ALJ acknowledged that Plaintiff allegedly suffers from a thyroid disorder, anxiety, depression, and arthritis. Plaintiff's counsel asserted that "[f]ibromyalgia is probably one of the main problems that she actually has, but as you are aware, fibromyalgia is a diagnosis by exclusion and so other illnesses had to be excluded." Plaintiff's counsel conceded that Plaintiff has arthritis in her knees and possibly in her hand, but he attributed the remainder of her pain to fibromyalgia. ECF Dkt. #12 at 83.

Plaintiff testified that she quit her previous job as a hairdresser because she was frequently absent from work due to pain. *Id.* at 85. She is prescribed Vicodin and Naproxen for her arthritis, her knees, and her fibromyalgia. *Id.* at 86, 89. She testified that her knee still hurts despite surgery to repair a torn meniscus in 2006. *Id.* She has pain in her fingers, hands, wrists, elbows, shoulders, upper back, neck, lower back, hips, knees, and her ankles. *Id.* at 89.

-4-

She also found the busy salon to be very stressful, and she often went to the restroom when she felt she was having an anxiety attack. *Id.* at 91. She has experienced similar anxiety attacks at Wal-Mart at Christmas time and at a haunted corn maze on Halloween. *Id.* at 92. She does not like crowds and she does not like to leave her parent's house. *Id.* at 91, 94. She believes that her mental problems have always been present, however they have increased in severity over time. *Id.* at 96.

Plaintiff testified that she and her husband live with her parents. ECF Dkt. #12 at 84. Plaintiff and her husband began residing with her parents in order to care for her father after he had a heart attack, but now her parents care for her. Plaintiff's parents and her husband perform the household cooking and cleaning. *Id.* at 87. Each day, her husband has to help her out of bed in the morning, she has coffee, then returns to her bedroom for the day. She doesn't sleep very well at night, so she tries to sleep during the day. *Id.* at 88. She grocery shops once a week with her father, but she can only stand for approximately twenty minutes to a half hour, and she can only walk ten to twenty minutes, otherwise her knees and hips will start hurting. She can only carry about five pounds. *Id.* According to a function report dated February 16, 2009, Plaintiff stated that she has difficulty tying her shoes and grasping small things due to her CTS.

Plaintiff saw her treating physician, Mark Stabile, D.O., on several occasions following her alleged onset date of November 1, 2008. At her first appointment with Dr. Stabile, Plaintiff complained of knee pain. Plaintiff had normal ligaments and no abnormal swelling in her knees. There were no clinical signs of rheumatoid arthritis and her examination was normal. Dr. Stabile recommended x-rays, which Plaintiff declined. Dr. Stabile noted that Plaintiff had undergone arthroscopic knee surgery in April of 2006 and carpal tunnel surgery in July of 2003. ECF Dkt. #12 at 370-371. He diagnosed knee pain and hypothyrodism.

According to Dr. Stabile's medical notes, Plaintiff smoked one pack of cigarettes a day for fifteen years and engaged in low impact activities for exercise. *Id.* Dr. Stabile prescribed Synthroid for hypothyroidism and Fluoxetine for depression. Plaintiff's next appointment with Dr. Stabile was on March 10, 2009. She was diagnosed with hypothyroidism and patello-formoral syndrome and she was taught quadriceps exercises. *Id.* at 367-68.

On March 18, 2009, Plaintiff underwent a one-time consultative examination with Eulogio Sioson, M.D. *Id.* at 387-388. Plaintiff reported joint pain and depression. She claimed that her knee pain had increased in the three years since she underwent arthroscopic surgery on her right knee, as well as pain in her hips. She also reported pain in her wrists, which reoccurred approximately one year ago. Her knee pain was an eight on a scale of one to ten, and her wrist pain was a seven out of ten. She took ibuprofen, but claimed that it did not help. At the time, she was able to do laundry, cook, clean the house, vacuum, and do limited grocery shopping. She had gained 130 pounds in the last six years, which she attributed to her hypothyroidism, and had difficulty sleeping. Dr. Sioson concluded that based upon Plaintiff's pain limitation, she would have difficulty doing work-related activities, however he reached no specific conclusions regarding her capacity to work or the physical limitations caused by her pain.

Plaintiff returned to Dr. Stabile on July 7, 2009, with complaints of generalized joint pain over the previous two months. Dr. Stabile noted that Plaintiff had tender muscles but was in no acute distress and was neurologically intact. Dr. Stabile diagnosed myalgia and myositis, unspecified, and prescribed Cymbalta, in place of Prozac, which had been prescribed by a previous physician, and Lyrica, for pain control and as a sleep aid. *Id.* at 462-463. At her next appointment, on August 4, 2009, Plaintiff described her joint pain as being limited to her lower leg. Dr. Stabile noted that Plaintiff's myalgia and myositis, unspecified, was currently stable. Dr. Stabile prescribed Naproxen and recommended a follow-up appointment in three months. *Id.* at 460-461.

Eight months later, on April 22, 2010, Plaintiff saw Dr. Stabile for blood work and a review of her medications. She did not complain about pain. Dr. Stabile noted that Plaintiff's myalgia was currently stable. *Id.* at 457-458. In August of 2010, Plaintiff went to the emergency room at St. Joseph's Hospital complaining of knee pain and swelling. X-rays of her right knee showed that it was within normal limits. *Id.* at 525. She was treated conservatively with Naprosyn and Motrin for pain. When Plaintiff returned to Dr. Stabile on October 1, 2010 for a routine check-up, she did not report any pain. His medical notes indicate that Plaintiff was still engaging in low impact activities for exercise. At her final visit with Dr. Stabile on October 14, 2010, she sought treatment for a

swollen eye, which Dr. Stabile diagnosed as conjunctivitis. *Id.* at 466-467. Dr. Stabile noted that her knee pain had improved. *Id.*

Despite the foregoing medical records, on November 23, 2010, Dr. Stabile completed a pain questionnaire, in which he opined that Plaintiff suffered "pain in all 18 locations consistent [with] fibromyalgia also has some decrease in pain [with] treatment of the fibromyalgia." *Id.* at 502. He further opined that Plaintiff's pain limits her ability to do basic work-related activities and that there is typically a psychological component to fibromyalgia patients' pain. He concluded that Plaintiff was truthful about her perception of pain. *Id.*

That same day, Dr. Stabile completed a Medical Statement of Physical Limitations and Mental Abilities. *Id.* at 503. He concluded that Plaintiff could stand for fifteen minutes at a time, and sit for thirty minutes at one time, and carry five pounds occasionally. She could bend, stoop, raise her arms over her shoulders, and engage in manipulation with her hands occasionally. With respect to her mental limitations, he found that she was moderately impaired in her ability to work with others and to interact appropriately with the general public. He ultimately concluded that Plaintiff was incapable of performing any work, and that her impairment would cause her to be absent more than three days a month. He asserted that the foregoing limitations existed since November 1, 2008.

> Turning to Plaintiff's first argument, the ALJ provided the following analysis at step three:
>
> There was no indication in the overall objective medical evidence that the claimant met the criteria of the listings stipulated in the regulations relating to these impairments, In addition, there were no findings substituted for any absent criteria of each section, or in any other listed impairment.
>
> The undersigned also considered the criteria in Appendix I to determine whether the claimant's obesity alone or in combination with other impairments met or equaled a listing. There was nothing in the record to show complications satisfying those requirements. (20 C.F.R. Part 404, Subpart P, Appendix 1). In addition, there were no findings that were substituted for any absent criteria of each section, or in any other relevant listed impairment. (SSR 02-1p).

ECF Dkt. #12 at 68.

In *Reynolds v. Commissioner of Social Security*, 424 Fed. App'x 411 (6th Cir. 2011), the Sixth Circuit Court of Appeals reversed and remanded the case when the ALJ found that the claimant had severe physical and mental impairments at Step Two of the sequential analysis but

-7-

failed to analyze the claimant's physical impairment at Step Three, despite concluding that his physical impairment had failed to meet or equal a Listing. The Sixth Circuit noted that while the ALJ had thoroughly addressed the claimant's severe mental impairments in his Step Three analysis, " '[n]o analysis whatsoever was done as to whether Reynolds' physical impairments (all summed up in his finding of a severe 'back pain' impairment) met or equaled a Listing under section 1.00, despite his introduction concluding that they did not." *Id.* at 415. The Sixth Circuit found that:

> In short, the ALJ needed to actually evaluate the evidence, compare it to Section 1.00 of the Listing, and give an explained conclusion, in order to facilitate meaningful judicial review. Without it, it is impossible to say that the ALJ's decision at Step Three was supported by substantial evidence.

*Id.* at 416 [citations omitted].

Plaintiff essentially contends that there is a *per se* rule that, if an ALJ fails to undertake a specific analysis under 1.02, the matter must be remanded. Listing 1.02, captioned "Major dysfunction of a joint(s) (due to any cause)" reads, in its entirety:

> Characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With:
>
> A. Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b;
>
> OR
>
> B. Involvement of one major peripheral joint in each upper extremity (i.e., shoulder, elbow, or wrist-hand), resulting in inability to perform fine and gross movements effectively, as defined in 1.00B2c.

Defendant argues that the ALJ provided sufficient analysis of Plaintiff's pain. Because Plaintiff's physical examinations and objective studies were largely unremarkable with no documented cause for her severe pain in her knees and hands[3], Defendant asserts that the ALJ's articulation of the "B" criteria under 12.04 and 12.06 was sufficient to survive review.

---

[3]In the Decision, the ALJ cited Plaintiff's normal x-rays, successful prior CTS surgery, and conservative treatment of her CTS, and her minimal tenderness, lack of instability, benign diagnostic testing, and conservative treatment of the arthritis in her knee to discount her claims of severe pain.

Plaintiff relies on *May v. Astrue*, 2011 WL 3490186 for the proposition that "Defendant's *post hoc* rationale that the evidence of record did not establish that [Plaintiff's] physical impairments satisfied the listing" is insufficient to cure defects in the ALJ's analysis and that " the ALJ was required to evaluate [the] evidence, compare it to [the appropriate section of] the Listings, and give an explanation, in order to facilitate meaningful judicial review." ECF Dkt. #12 at 573. However, the magistrate judge in *May* further observed that "correction of such an error," based upon the medical record in that case, "is not merely a formalistic matter of procedure, for it is possible that the evidence May put forth could meet this listing." *May* at *9.

In other words, in *May*, there was sufficient evidence in the record for the ALJ to conclude that the plaintiff in *May* could meet or equal a listing. The same is not true here. The ALJ considered Plaintiff's physical impairments, in conjunction with her obesity, but concluded that her impairments did not meet or equal a Listing. Because of a lack of evidence in this case, remanding this matter for a specific reference to 1.02 by the ALJ would constitute a "formalistic matter of procedure" with respect to Plaintiff's musculoskeletal pain.

Next, Plaintiff contends that the ALJ did not give proper weight to the opinion of Dr. Stabile that Plaintiff could not perform gainful activity. The ALJ must generally give greater deference to the opinions of the claimant's treating physicians than to those of non-treating physicians. SSR 96-2p, 1996 WL 374188 (July 2, 1996); *Wilson*, 378 F.3d at 544. A presumption exists that the opinion of a treating physician is entitled to great deference. *Id.*; *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 243 (6th Cir. 2007). If that presumption is not rebutted, the ALJ must afford controlling weight to the opinion of the treating physician if that opinion regarding the nature and severity of a claimant's conditions is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the] case record." *Wilson,* 378 F.3d at 544.

However, "[t]he determination of disability is [ultimately] the prerogative of the [Commissioner], not the treating physician." *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) quoting *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir.1985). When an ALJ determines that a treating physician's opinion is not entitled to controlling weight, he must consider the

following factors in determining the weight to give to that opinion: the length, frequency, nature, and extent of the treatment relationship; the supportability and consistency of the physician's conclusions; the specialization of the physician; and any other relevant factors. *Id.*

If an ALJ decides to discount or reject a treating physician's opinion, he must provide "good reasons" for doing so. SSR 96-2p. The ALJ must provide reasons that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.* This allows a claimant to understand how his case is determined, especially when he knows that his treating physician has deemed him disabled and he may therefore " 'be bewildered when told by an administrative bureaucracy that he is not, unless some reason for the agency's decision is supplied.' " *Wilson,* 378 F.3d at 544 quoting *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir.1999).

Further, it "ensures that the ALJ applies the treating physician rule and permits meaningful appellate review of the ALJ's application of the rule." *Id.* If an ALJ fails to explain why he rejected or discounted the opinions and how those reasons affected the weight accorded the opinions, this Court must find that substantial evidence is lacking, "even where the conclusion of the ALJ may be justified based upon the record." *Rogers,* 486 F.3d at 243, citing *Wilson*, 378 F.3d at 544.

"When a treating physician . . . submits an opinion on an issue reserved to the Commissioner-such as whether the claimant is 'disabled' or 'unable to work'- the opinion is not entitled to any particular weight." *Turner v. Commissioner of Social Security*, No. 09-5543, 2010 WL 2294531 at *4, (6th Cir. June 7, 2010), unreported; *see also* 20C.F.R. §416.927(e)(1). "Although the ALJ may not entirely ignore such an opinion, his decision need only explain the consideration given to the treating source's opinion." *Id.* (internal quotation and citation omitted). In *Turner*, a treating source opined that the claimant was unable to work" and was not "currently capable of a full-time 8-hour workload." *Id.* at *5. The Sixth Circuit held that the ALJ adequately addressed the opinion in stating that it was an opinion on an issue reserved to the Commissioner. *Id*.

The ALJ did not give controlling weight to Dr. Stabile's opinion for obvious reasons. First, Dr. Stabile diagnosed Plaintiff's fibromyalgia without any effort to rule out other potential medical

-10-

explanations for her pain. Fibromyalgia patients often present no objectively alarming signs, and manifest normal muscle strength and neurological reactions and have a full range of motion. *Preston v. Sec'y of Health & Human Servs.*, 854 F.2d 815, 820 (6th Cir.1988). As a consequence, the process of diagnosing fibromyalgia includes (1) the testing of a series of focal points for tenderness and (2) the ruling out of other possible conditions through objective medical and clinical trials. *Id.* In *Preston*, the claimant challenged the weight given to the opinion of her treating physician. The Sixth Circuit provided the following analysis of the treating physician's effort to diagnose her fibromyalgia:

> On the other hand, over a period of time Dr. Crabbs has done all that can be medically done to diagnose Preston's fibrositis and to support his opinion of disability. He referred Preston to a neurologist, orthopaedist, rheumatologist, and a psychologist for evaluation. He also referred Preston to physical therapy and a pain clinic for treatment. He observed that Preston's complaints of pain, stiffness and fatigue were classic symptoms of fibrositis. Moreover, even before Dr. Crabbs was able to pinpoint fibrositis as the proper diagnosis, he was injecting cortisone or novocaine for relief into the parts of the body that he later learned were "focal tender points" characteristic of fibrositis patients. Given the circumstances of this case and the nature of this disease, Dr. Crabbs' systematic elimination of other diagnoses, identification of focal tender points, and observation of other classic symptoms of fibrositis satisfied the standard set forth in *Duncan*, supra, which requires objective medical evidence to confirm the severity of the pain arising from the condition or that the objectively established medical condition is of such severity that it can be reasonably expected to produce disabling pain.

*Id.* at 820. Here, Dr. Stabile appears to have performed a pressure-point test and, without further investigation, concluded that Plaintiff had fibromyalgia.

Furthermore, Dr. Stabile's medical notes do not support his conclusions regarding the degree of Plaintiff's pain. His records do not include an assessments of her pain on a scale of one to ten. He employs no adjectives to describe Plaintiff's pain. His does not include a list of limitations created by Plaintiff's pain. His records merely indicate "joint pain," which stabilized with medication, including an over-the-counter pain reliever, Naproxyn. The ALJ specifically cited Dr. Stabile's conservative treatment of Plaintiff's pain in rejecting his opinion. ECF Dkt. #12 at 71. Because Dr. Stabile's conclusions are largely inconsistent with his medical notes and the course of treatment he prescribed, the ALJ did not err when he did not give controlling weight to Dr. Stabile's opinion regarding Plaintiff's limitations.

Finally, Plaintiff contends that the ALJ failed to appropriately assess her credibility. An ALJ may discount a claimant's credibility where the ALJ finds contradictions among the medical records, claimant's testimony, and other evidence. *Walters v. Commissioner of Social Security*, 127 F.3d 525, 531 (6th Cir.1997). "It [i]s for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony." *Heston v. Commissioner of Social Security*, 245 F.3d 528, 536 (6th Cir.2001), quoting *Myers v. Richardson*, 471 F.2d 1265, 1267 (6th Cir.1972). The court "may not disturb" an ALJ's credibility determination "absent [a] compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir.2001). Nevertheless, an ALJ's credibility determinations regarding subjective complaints must be reasonable and supported by substantial evidence. *Rogers v. Commissioner of Social Security*, 486 F.3d 234, 249 (6th Cir.2007).

The social security regulations establish a two-step process for evaluating pain. *See* 20 C.F.R. § 416.929. In order for pain or other subjective complaints to be considered disabling, there must be (1) objective medical evidence of an underlying medical condition, and (2) objective medical evidence that confirms the severity of the alleged disabling pain arising from that condition, or objectively, the medical condition is of such severity that it can reasonably be expected to produce such disabling pain. *See id.; Stanley v. Secretary of Health and Human Services*, 39 F.3d 115, 117 (6th Cir. 1994); *Felisky v. Bowen*, 35 F.3d 1027, 1038-1039 (6th Cir. 1994); *Duncan v. Secretary of Health and Human Services*, 801 F.2d 847, 853 (6th Cir. 1986). Therefore, the ALJ must first consider whether an underlying medically determinable physical or mental impairment exists that could reasonably be expected to produce the individual's pain or other symptoms. *See id.* Secondly, after an underlying physical or mental impairment is found to exist that could reasonably be expected to produce the claimant's pain or symptoms, the ALJ then determines the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which the symptoms limit the claimant's ability to do basic work activities. *See id.*

When a disability determination that would be fully favorable to the plaintiff cannot be made solely on the basis of the objective medical evidence, an ALJ must analyze the credibility of the plaintiff, considering the plaintiff's statements about pain or other symptoms with the rest of the

relevant evidence in the record and factors outlined in Social Security Ruling 96-7p. *See* SSR 96-7p, 61 Fed. Reg. 34483, 34484-34485 (1990). These factors include: the claimant's daily activities; the location, duration, frequency and intensity of the pain; precipitating and aggravating factors; the type, dosage, effectiveness and side effects of any pain medication; any treatment, other than medication, that the claimant receives or has received to relieve the pain; and the opinions and statements of the claimant's doctors. *Felisky*, 35 F.3d at 1039-40. Since the ALJ has the opportunity to observe the claimant in person, a court reviewing the ALJ's conclusion about the claimant's credibility as to pain should accord great deference to that determination. *See Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1234 (6th Cir.1993). Nevertheless, an ALJ's assessment of a claimant's credibility as to pain must be supported by substantial evidence. *Walters v. Commissioner of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997).

The analysis set forth in Social Security Ruling 96-7p is particularly relevant where a claimant has been diagnosed with fibromyalgia. "Opinions that focus solely upon objective evidence are not particularly relevant" due to the "the unique evidentiary difficulties associated with the diagnosis and treatment of fibromyalgia." *Rogers v. Commissioner of Social Security*, 486 F.3d 234, 245 (6th Cir.2007).

Cases involving fibromyalgia "place[ ] a premium . . . on the assessment of the claimant's credibility." *Swain v. Comm'r of Soc. Sec.*, 297 F.Supp.2d 986, 990 (N.D.Ohio 2003). This is because "unlike medical conditions that can be confirmed by objective testing, fibromyalgia patients present no objectively alarming signs." *Rogers*, 486 F.3d at 243. "Nonetheless, a diagnosis of fibromyalgia does not automatically entitle [a claimant] to disability benefits ...." *Vance v. Comm'r of Soc. Sec.*, 260 F. App'x 801, 806 (6th Cir.2008) (emphasis in original). Accordingly, in cases involving fibromyalgia an ALJ must assess Plaintiff's credibility and "decide ... if the claimant's pain is so severe as to impose limitations rendering her disabled." *Swain*, 297 F.Supp.2d at 990.

Defendant argues that the ALJ credited some of Plaintiff's testimony regarding her ability to work based upon the limitations set forth in her RFC: The ALJ credited Plaintiff's statements regarding her inability to stand and walk by limiting her to sedentary work. The ALJ credited Plaintiff's statements about her reduced ability to concentrate by limiting her to simple, routine

-13-

tasks.  However, the ALJ's sole articulated reason for rejecting Plaintiff's testimony with respect to her debilitating pain was the absence of objective medical evidence.  The ALJ did not address any of the considerations in SSR 97-6p, and, as a consequence, this matter must be remanded

For the foregoing reasons, the decision of the Commissioner is REVERSED and the matter is REMANDED to the ALJ for reevaluation and further analysis as to Plaintiff's credibility regarding the pain caused by her fibromyalgia.

DATE: July 12, 2012

                                            */s/George J. Limbert*
                                            GEORGE J. LIMBERT
                                            UNITED STATES MAGISTRATE JUDGE